USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_9/24/2024___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HECTOR SANTILLAN,

              Petitioner,

        -against-

UNITED STATES OF AMERICA,

              Respondent.

20-cv-07846-MKV

13-cr-00138-MKV

**OPINION AND ORDER
DENYING PETITION FOR A WRIT OF
HABEAS CORPUS**

---

MARY KAY VYSKOCIL, United States District Judge:

      Petitioner Hector Santillan ("Petitioner") petitions this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). [ECF No. 1 ("Petition")]. Petitioner contends that he is entitled to habeas relief because (1) the district court erred in denying Petitioner's motion to suppress evidence obtained during an illegally prolonged traffic stop; (2) the district court erred in declining to suppress the evidence of Petitioner's roadside statements to police and the subsequent search of his person; and (3) the district court erred in relying on the testimony of Petitioner's co-defendant and later cooperating witness for the government, Junior Rivera-Vasquez ("Rivera-Vasquez"), in applying two sentencing enhancements. Petitioner also asks the Court to excuse the untimeliness of his Petition, claiming that extraordinary circumstances prevented his timely filing. For the reasons set forth herein, the Petition is DENIED as untimely, and in any event, because all issues presented by the Petition previously were raised and rejected on Petitioner's direct appeal.

## FACTUAL BACKGROUND

      On March 4, 2015, a grand jury returned a superseding indictment charging Petitioner with two counts. Count One charged Petitioner with conspiracy to distribute and possess with intent to

distribute oxycodone, heroin, and 500 grams and more of cocaine, in violation of 21 U.S.C. § 846. Count Two charged Petitioner with distribution and possession with intent to distribute 500 grams and more of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. *United States v. Santillan* (*Santillan I*), No. 13-cr-00138-MKV, ECF No. 70.

The evidence at Petitioner's trial, at which he was convicted by a jury, established the following. Petitioner was a passenger in Rivera-Vasquez's car travelling from New York City to Massachusetts. *Santillan I*, ECF Nos. 104, 106, 108, 110, 112, 114 (together, "Tr.") at 39:7–11; *United States v. Santillan* (*Santillan II*), 902 F.3d 49, 53 (2d Cir. 2018). In New York City, Petitioner and Rivera-Vasquez had purchased four kilograms of cocaine, which they hid in a compartment in the front passenger seat of Rivera-Vasquez's vehicle, where Petitioner sat during their return trip. Tr. 39:15–17, 53:24–57:10, 99:4–7; *Santillan II*, 902 F.3d at 54–55.

As Petitioner and Rivera-Vasquez were driving to Massachusetts, Officer Isai Moreira of the Westchester County Department of Public Safety observed Rivera-Vasquez commit five violations of the New York Vehicle and Traffic Laws on the Hutchinson River Parkway: (1) tires touching the fog line; (2) speeding; (3) changing lanes without signaling; (4) a second incident of tires touching the fog line; and (5) following too closely. Tr. 35:2–11; *Santillan II*, 902 F.3d at 53. Officer Moreira effected a traffic stop. Tr. 35:14–21. Officer Moreira observed that Petitioner and Rivera-Vasquez could not give coherent information about their travels and appeared "very nervous." Tr. 39:5–41:22; *Santillan II*, 902 F.3d at 53

Approximately eight minutes after initiating the traffic stop, Officer Moreira had obtained all information necessary to cite Rivera-Vasquez for several traffic violations. Tr. 59:12–61:10; *Santillan II*, 902 F.3d at 53–54. However, Officer Moreira determined to continue investigating Petitioner and Rivera-Vasquez. Tr. 42:11–18; *Santillan II*, 902 F.3d at 54.

Officer Moreira spoke individually with Petitioner and Rivera-Vasquez. *Santillan II*, 902 F.3d at 53. Both Petitioner and Rivera-Vasquez stated that they had stayed at Petitioner's aunt's house overnight. Tr. 39:9–14. Rivera-Vasquez, however, could not name Petitioner's aunt or recall the location of her house. Tr. 39:18–40:2, 42:15–18, 43:14–44:6. Both Petitioner and Rivera-Vasquez stated that they did not know each other well. Tr. 43:20–24, 45:22–24; *Santillan II*, 902 F.3d at 54.

After his conversation with Rivera-Vasquez, Officer Moreira performed a pat-down search of Rivera-Vasquez, removed a wallet and a cell phone, and asked Rivera-Vasquez to sit, uncuffed, in the back of the patrol car and told him that he was not in trouble. Tr. 44:14–20; *Santillan II*, 902 F.3d at 54. While speaking to Petitioner, Officer Moreira observed more than one cell phone in the center console of the car, meaning that the car contained more cell phones than occupants. Tr. 47:17–22; *Santillan II*, 902 F.3d at 54. Officer Moreira also noticed that the passenger seat was higher than the driver's seat. Tr. 47:25–48:4; *Santillan II*, 902 F.3d at 54. When Officer Moreira asked Petitioner to exit the vehicle, Officer Moreira observed that Petitioner "hesitated" and "looked out in his general area as to kind of do a quick look-over" before leaving the car. Tr. 47:11–16; *Santillan II*, 902 F.3d at 54. Although Petitioner had told Officer Moreira that he only had $80 on his person, Officer Moreira recovered $1,000 in cash during a pat-down search of Petitioner. Tr. 46:6–9, 48:13–50:11; *Santillan II*, 902 F.3d at 54. Officer Moreira asked Petitioner to sit, uncuffed, in a second patrol car and told him that he was not in trouble or under arrest. Tr. 50:25–51:10; *Santillan II*, 902 F.3d at 54.

Based on his observations, Officer Moreira sought and obtained verbal consent from Rivera-Vasquez to search the car while Rivera-Vasquez and Petitioner sat uncuffed in separate patrol cars. Tr. 51:11–15, 76:5–77:7; *Santillan II*, 902 F.3d at 54. Officer Moreira and another

officer searched the car and noticed that the passenger seat was upholstered in a different material than the driver's seat and that there was plastic wrapping between the cushion and the backrest of the passenger seat, which Officer Moreira knew from his training and experience to be consistent with the packaging of narcotics for transportation. Tr. 51:21–54:21; *Santillan II*, 902 F.3d at 54. Officer Moreira requested a narcotics canine. Tr. 54:19–55:2; *Santillan II*, 902 F.3d at 54. About thirty-seven minutes into the stop, while waiting for the canine to arrive, Officer Moreira issued citations for three traffic violations to Rivera-Vasquez. *Santillan II*, 902 F.3d at 54. The narcotics canine arrived and signaled the presence of narcotics in the front passenger seat of Rivera-Vasquez's vehicle. Tr. 55:3–13; *Santillan II*, 902 F.3d at 54–55. Officer Moreira pulled back the seat cushion and found two packages of a substance later determined to be cocaine. Tr. 55:14–56:25, 377:13–378:8; *Santillan II*, 902 F.3d at 55. Petitioner and Rivera-Vasquez were then arrested, approximately eighty minutes after the traffic stop began. Tr. 57:22–58:11; *Santillan II*, 902 F.3d at 55.

## PROCEDURAL HISTORY

Petitioner, joined by Rivera-Vasquez, moved before the trial court to suppress the evidence recovered from Petitioner's person and Rivera-Vasquez's vehicle, as well as Petitioner's statements to Officer Moreira. *Santillan II*, 902 F.3d at 55; *Santillan I*, ECF Nos. 8, 14. Petitioner argued that the police lacked probable cause or reasonable suspicion to detain Petitioner longer than eight minutes into the traffic stop, when Officer Moreira could have issued the traffic citations; that the pat-down of Petitioner's person was not supported by a reasonable suspicion that he was armed; that Petitioner's statements regarding the recovered money were the fruit of illegally obtained evidence; and that Petitioner's other pre-arrest statements were obtained through a *de facto* arrest without *Miranda* warnings. *Santillan II*, 902 F.3d at 55. District Judge Robert W.

Sweet denied Petitioner's suppression motion, and subsequently denied a motion for reconsideration following the Supreme Court's decision in *Rodriguez v. United States*, 575 U.S. 348 (2015), which addressed the unlawful extension of traffic stops. *Santillan I*, ECF Nos. 31, 95.

Following the district court's denial of the suppression motion, Rivera-Vasquez pleaded guilty and became a cooperating witness against Petitioner. *Santillan II*, 902 F.3d at 55; Tr. 85:19–86:4. At Petitioner's trial, Rivera-Vasquez described Petitioner's role in distributing cocaine, heroin, oxycodone, and Percocet. Tr. 96:6–98:20; *Santillan II*, 902 F.3d at 55. Rivera-Vasquez testified that Petitioner also engaged in other criminal activity, such as possessing an assault rifle while trafficking drugs and attempting to kidnap a person Petitioner suspected of stealing narcotics and narcotics sale proceeds. Tr. 153:4–154:5, 310:8–321:22, 344:8–345:17; *Santillan II*, 902 F.3d at 55.

A jury convicted Petitioner of both counts. *Santillan II*, 902 F.3d at 55. Judge Sweet sentenced Petitioner principally to 151 months' imprisonment, at the bottom of his Sentencing Guidelines range of 151 to 188 months' imprisonment. *Santillan I*, ECF Nos. 128, 133. In calculating Petitioner's Sentencing Guidelines range, Judge Sweet applied 2 two-level sentencing enhancements: one for Petitioner's possession of a firearm in connection with his drug offense, U.S.S.G. § 2D1.1(b)(1), and another for Petitioner's role in an attempted kidnapping related to the drug conspiracy, as an act of violence or a credible threat of violence, U.S.S.G. § 2D1.1(b)(2). *Santillan I*, ECF No. 128 at 7. Petitioner is currently serving his sentence. At the time of the Petition, Petitioner was housed at the Moshannon Valley Correctional Center in Philipsburg, PA. *See* Petition 38.[1]

---

[1] Citations to the Petition utilize the PDF page numbers provided in the ECF header.

Petitioner timely appealed to the United States Court of Appeals for the Second Circuit. *See Santillan II*, 902 F.3d 49.  On appeal, Petitioner raised the following issues with respect to the district court's denial of his suppression motion:

> (1) the traffic stop was unreasonably prolonged to the point that it became a *de facto* arrest for which probable cause was lacking; (2) there was no reasonable basis to frisk [Petitioner] for weapons; (3) [Petitioner's] statements were used against him in violation of *Miranda v. Arizona*; and (4) police officers obtained consent to search a car in which [Petitioner] was a passenger through coercion.

*Id.* at 52 (citation omitted).  Petitioner also argued that the government impermissibly vouched for its cooperating witness, Rivera-Vasquez; that Petitioner's trial counsel was ineffective; and that the district court committed procedural errors in calculating Petitioner's sentence.  *Id.* at 52–53. The Second Circuit affirmed Petitioner's conviction and sentence, addressing his suppression arguments by precedential opinion, *see Santillan II*, 902 F.3d at 53, 63, and his other arguments by summary order, *see United States v. Santillan* (*Santillan III*), 746 F. App'x 53, 55, 58 (2d Cir. 2018).

Petitioner filed a petition for a writ of certiorari, which the United States Supreme Court denied on April 1, 2019.  *See Santillan v. United States* (*Santillan IV*), 139 S. Ct. 1467 (2019). Thereafter, Petitioner claims that "[a]round March 24, 2020," he attempted to mail to the district court a document requesting an extension of time to file a Section 2255 motion, but that he mistakenly mailed the request to the United States District Court for the Eastern District of New York (and at an incorrect address for that court), and as such the document was returned to Petitioner as undeliverable on or around April 13, 2020.  *Santillan I*, ECF No. 155; Petition 15. Three months later, on July 17, 2020, Petitioner mailed a "Notice of Intent to File a Motion Pursuant to 28 U.S.C. § 2255 and a Request of Extension to File Such Motion" to this District.

*Santillan I*, ECF No. 155. Petitioner's case was then reassigned to this Court from the docket of the late Judge Sweet. *Santillan I*, ECF No. 156.

On August 6, 2020, the Court denied Petitioner's motion for an extension of time because Petitioner had not yet filed his contemplated Section 2255 motion, and under Second Circuit precedent, a district court may not grant an extension of time to file such a motion unless "the moving party requests the extension upon or after filing an actual section 2255 motion." *Santillan I*, ECF No. 157 (quoting *Green v. United States*, 260 F.3d 78, 82–83 (2d Cir. 2001)); *see Gonzalez v. United States*, No. 08-CR-684 (VSB), 2018 WL 5023941, at *3 (S.D.N.Y. Oct. 17, 2018) ("Because a federal court lacks jurisdiction to consider timeliness of a § 2255 petition until [it] is actually filed, an extension may be granted only *after* an actual [§] 2255 petition is filed." (internal quotation marks and citations omitted)); *see also Green*, 260 F.3d at 85 (declining to consider arguments regarding equitable tolling because appellant had not filed a Section 2255 motion). The Court determined that Petitioner's request for an extension of time did not contain sufficient information to allow the Court to construe it as a Section 2255 motion. *Santillan I*, ECF No. 157; *see Green*, 260 F.3d at 83–84.

On September 18, 2020, Petitioner mailed the present Petition, which was filed in this case on September 22, 2020. *See* Petition 40. Respondent the United States of America ("Respondent") opposed the Petition. [ECF No. 5 ("Gov't Opp.")]. Petitioner filed a reply brief. [ECF No. 7].

## LEGAL STANDARDS

### I.     Statute of Limitations Under Section 2255

A federal prisoner has one year from "the date on which the judgment of conviction becomes final" to file a Section 2255 motion. 28 U.S.C. § 2255(f)(1). "Finality attaches when th[e] [Supreme] Court affirms a conviction on the merits on direct review or denies a petition for

a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003); *Rosa v. United States*, 785 F.3d 856, 859 (2d Cir. 2015); *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005). "[A] district court may grant an extension of time to file a motion pursuant to section 2255 only if (1) the moving party requests the extension upon or after filing an actual section 2255 motion, and (2) 'rare and exceptional' circumstances warrant equitably tolling the limitations period." *Green*, 260 F.3d at 82–83. A movant seeking equitable tolling must also show that he "acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *United States v. Wright*, 945 F.3d 677, 685 (2d Cir. 2019) ("Even when extraordinary circumstances exist, however, a petitioner must demonstrate diligence to qualify for equitable tolling."); *Green*, 260 F.3d at 82. Courts in the Second Circuit "expect [even] *pro se* petitioners to know when the limitations period expires and to understand the need to file a [habeas] motion within that limitations period." *Wright*, 945 F.3d at 685 (quoting *Doe v. Menefee*, 391 F.3d 147, 177 (2d Cir. 2004)).

## II.    Motion to Vacate Under Section 2255

Under Section 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Should a court find "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack,"

the court must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b).

The relief permitted under Section 2255 is purposefully narrow to respect "the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995); *see United States v. Frady*, 456 U.S. 152, 166–68 (1982).  A collateral attack on a final judgment under Section 2255 is only available to correct "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *Bokun*, 73 F.3d at 12 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

"In the case of a collateral challenge based on constitutional claims, . . . rules regarding claim preclusion based on a prior adjudication apply."  *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).  "[T]he so-called mandate rule bars re-litigation of issues already decided on direct appeal."  *Id.*; *see also United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) ("It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." (internal quotation marks omitted)).  This rule "prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate."  *Yick Man Mui*, 614 F.3d at 53.  It "bars the raising in a habeas proceeding of a claim when the events underlying the claim were the same as those underlying a claim raised and decided on the merits on direct appeal."  *Id.* at 56.  Thus, a habeas petitioner cannot avoid this bar by presenting "simply a slightly altered rearticulation of a claim that was rejected on his direct appeal."  *United States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009) (per curiam) (quoting *Riascos-Prado v. United States*, 66 F.3d 30, 34 (2d

Cir. 1995)).  "The only exception" to this rule is met if there "has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal."  *Genao v. United States*, No. 08 CIV. 9313 LMS, 2010 WL 6210099, at *3 (S.D.N.Y. Sept. 16, 2010) (quoting *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980)), *report and recommendation adopted*, No. 08 CIV. 9313 RO, 2011 WL 924202 (S.D.N.Y. Mar. 16, 2011).

### III.    Hearing Under Section 2255

A district court considering a Section 2255 motion must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  A hearing is warranted if the motion sets forth "specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the defendant] to relief."  *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).  "The procedure for determining whether a hearing is necessary is in part analogous to . . . a summary judgment proceeding. . . .  If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made."  *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009).  However, the Court need not credit factual assertions contradicted by evidence in the record of the underlying proceeding.  *Id.* at 213–14.  Moreover, a hearing is not necessary "where the allegations are vague, conclusory, or palpably incredible."  *Gonzalez*, 722 F. 3d at 130 (internal quotation marks omitted).

### DISCUSSION

The Court has carefully reviewed the parties' submissions, the trial court record, the procedural history, and the Second Circuit's decisions in this case.  The Court finds that the Petition is time-barred and it is therefore DENIED.  The Court further finds that even if the Petition were

not time-barred, it nonetheless must be denied because all of Petitioner's claims were raised before and decided by the Second Circuit on direct appeal.

## I.    Petitioner Is Not Entitled to Equitable Tolling

The parties do not dispute that the Petition is untimely. Petitioner's conviction became final when the Supreme Court denied his petition for a writ of certiorari on April 1, 2019. *Santillan IV*, 139 S. Ct. 1467; *see Clay*, 537 U.S. at 527. Petitioner had one year from that date, until April 1, 2020, to timely file a habeas petition. *See* 28 U.S.C. § 2255(f)(1). The Petition was mailed to the Court on September 18, 2020 and docketed on September 22, 2020, over five months after the statutory deadline and plainly out of time. The Court cannot construe Petitioner's attempts to request an extension of time to file the Petition, the first of which was mailed on or around March 24, 2020, to be a timely filed petition for habeas relief, because Petitioner's letters did "not include sufficient information to allow the Court to construe [them] as a § 2255 motion." *Santillan I*, ECF No. 157; *see Green*, 260 F.3d at 83–84.

Therefore, in order for the Court to consider the Petition, Petitioner must show that "rare and exceptional circumstances warrant equitably tolling the limitations period" and that he "acted with reasonable diligence throughout the period he seeks to toll." *Green*, 260 F.3d at 82–83 (internal quotation marks omitted). Petitioner has not done so.

First, Petitioner's request for equitable tolling fails because he has not demonstrated that he pursued his rights diligently throughout the period he seeks to toll, one year from the time his conviction became final by the denial of a writ of certiorari by the Supreme Court. This standard does not require "extreme diligence" or "exceptional diligence," but rather "reasonable diligence." *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003). The Court must ask: "[D]id the petitioner act as diligently as reasonably could have been expected under the circumstances?" *Id.*

11

Here, Petitioner has not shown any amount of diligence, extreme, exceptional, reasonable, or otherwise.

The Petition does not contain any argument as to Petitioner's diligence, referencing only the alleged extraordinary circumstances that prevented his timely filing. *See* Petition 15–16. Even construing the Petition liberally to raise the strongest arguments it suggests in light of Petitioner's *pro se* status, *see Green*, 260 F.3d at 83, the Court does not find that Petitioner meets his burden to establish reasonable diligence. As Respondent points out in its opposition brief, Petitioner concedes that he did not begin to work on his Section 2255 motion until sometime after he received the returned mail of his first request for an extension in April 2020, and that he only "jump[ed] into research" once the prison's law library reopened after the height of the COVID-19 pandemic, ostensibly sometime in the summer of 2020. Petition 15; *see* Gov't Opp. 11. All of these actions postdate the statutory filing deadline and therefore do not demonstrate that Petitioner acted with reasonable diligence "*during* the time that he seeks to have tolled." *Doe*, 391 F.3d at 175 (emphasis added). Even in consideration of any difficulties presented by Petitioner's *pro se* status, his emotional state, the limitations of the law library, and the COVID-19 pandemic (which reached a crisis point in the United States only in the final month of Petitioner's limitations period), *see infra*, the Court cannot say that Petitioner "act[ed] as diligently as reasonably could have been expected under the circumstances." *Baldayaque*, 338 F.3d at 153; *see Wright*, 945 F.3d at 685.

"If the petitioner is unable to establish that he diligently attempted to file his petition, the extraordinary circumstances on which his tolling claim is based cannot be said to have caused the lateness of his petition." *Doe*, 391 F.3d at 175 (citing *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001)). Thus, Petitioner's request for equitable tolling necessarily fails. Yet even if

the Court were to proceed to consider the circumstances that Petitioner cites, the Court would not find these circumstances to be rare and exceptional so as to warrant tolling the limitations period.

Petitioner argues that four "extraordinary circumstances" prevented him from timely submitting his Petition: (1) the return of Petitioner's first, incorrectly addressed request for an extension of time; (2) the months-long closure of the Moshannon Valley Correctional Center law library due to the COVID-19 pandemic; (3) Petitioner's depression as a result of trying to read and understand the law to file the Petition; and (4) the limited case law available in the law library. Petition 16.  None of these circumstances is exceptional.

First, as the Court has already addressed, *see supra*, even if Petitioner's first request for an extension of time were not returned as undeliverable, it would not have nullified the untimeliness of his Petition because that request could not be construed as a Section 2255 motion.  *See Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (explaining the need for a "petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing").  Moreover, Petitioner could have attempted to mitigate this circumstance by communicating with the Court at some point before he filed his second request for an extension, three months after receiving the returned mail.  *See Caesar v. United States*, No. 10 CIV. 402, 2011 WL 4822573, at *2–*3 (S.D.N.Y. Oct. 11, 2011) (applying equitable tolling in part due to petitioner's prompt communications with the court as to his brief delay).

Next, Petitioner's arguments regarding the law library at his correctional facility, whether due to its limited resources or its closure during the COVID-19 pandemic (which, again, primarily postdates the passing of the statutory deadline, severing any causal connection), are not sufficient to demonstrate exceptional circumstances.  "[A] petitioner is not entitled to equitable tolling

13

simply because he is incarcerated and faced the routine restrictions of prison life," including limited legal reference materials. *Id.* at *3; *see Thompson v. United States*, 14-cv-7189 (PKC), 2015 WL 4064570, at *4 (S.D.N.Y. Apr. 13, 2015) ("Courts in this district have routinely concluded that limited access to a law library does not constitute an 'extraordinary circumstance' warranting equitable tolling."); *Quezada v. Capra*, No. 13-cv-8574 VSB, 2015 WL 2130217, at *2 (S.D.N.Y. May 6, 2015) (lack of Spanish-language resources in prison alone is insufficient to show extraordinary circumstances, and "the prisoner must generally undertake some effort to obtain assistance in his language from outside the prison"). And while the library closure in this case derived from an unprecedented global pandemic, this fact alone does not render the circumstance extraordinary. *See Hines v. United States*, No. 17-cr-364-2 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021) (finding that the effects of the COVID-19 pandemic could present extraordinary circumstances, but "[a] petitioner cannot meet his burden of establishing that a court should apply the doctrine of equitable tolling simply by making a passing reference to the pandemic or the resulting lockdown" (quoting *United States v. Aigbekaen*, No. CR JKB-15-0462, 2021 WL 1816967, at *1 (D. Md. May 6, 2021)).

Finally, the Second Circuit has recognized that a petitioner's mental illness may qualify as an exceptional circumstance, but such a condition "does not toll a filing deadline *per se*," and the burden rests with the petitioner to demonstrate that his mental illness impacted his ability to timely file. *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010). To meet this burden, a petitioner "must offer a 'particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights' . . . despite [his] diligent efforts to do so." *Id.* (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)). Here, as noted,

Petitioner did not act diligently in pursuit of his rights, so he cannot claim an exception for mental illness in any event.

Moreover, Petitioner's claimed "emotional depression," which is not described in a "particularized" fashion, *id.*, apparently arose because of the circumstance of having to file an *already late* petition for habeas relief.  *See* Petition 15 ("[A]fter receiving the returned mail and not knowing where to start with a § 2255 motion petitioner's emotional state went into a stand still, felt voiceless and without life."), 16 (citing "[t]he emotional depression petitioner is going through, by trying to read and understand the law in oreder [sic] to file a meaningful § 2255 motion").  Petitioner's emotional state is not a circumstance that "caused him to miss the original filing deadline." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); *see Valverde*, 224 F.3d at 134; *Jones v. Superintendent of Wende Corr. Facility*, No. 16-cv-7109 (VB) (PED), 2020 WL 9048784, at *6 (S.D.N.Y. Oct. 6, 2020) (holding that because petitioner's exacerbated mental illness "occurred after the limitations period had already ended," he was not entitled to equitable tolling as "[t]he extraordinary circumstances must be connected to the inability to timely file"), *report and recommendation adopted*, No. 16 CV 7109 (VB), 2021 WL 1198933 (S.D.N.Y. Mar. 30, 2021).  In fact, Petitioner asserts causality running in the reverse: the preparation and filing of his untimely Petition caused his poor emotional state.  *See* Petition 15–16.

Because Petitioner has failed to demonstrate reasonable diligence and rare and exceptional circumstances sufficient to equitably toll the statute of limitations and excuse his untimely Petition, the Court must DENY the Petition as time-barred.[2]

---

[2] Although the Second Circuit has held that "a petitioner who satisfies the Supreme Court's actual-innocence standard may . . . have his substantive claims heard on the merits, notwithstanding an otherwise unexcused delay in filing his habeas petition," *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012), the Court need not address this exception because Petitioner has not argued that he meets the actual-innocence standard, nor could he.

**II.      Petitioner's Claims Were Raised and Decided on Direct Appeal**

Even if the Court were to equitably toll the statute of limitations and proceed to consider the Petition, the Court would deny the Petition as procedurally barred because it seeks solely to relitigate issues that were raised before and decided by the Second Circuit on Petitioner's direct appeal, in violation of the mandate rule. *See Yick Man Mui*, 614 F.3d at 53.

First, Petitioner argues that the district court erred in failing to suppress evidence derived from an illegally extended traffic stop in violation of the Fourth Amendment. *See* Petition 22–27. The Second Circuit rejected this claim and held that, taken together, all of the circumstances, including "[t]he men's nervousness and inability to specify where they had come from[,] would have suggested to a reasonable officer with Officer Moreira's experience that the men were struggling to fabricate a cover story," and therefore "Officer Moreira had reasonable suspicion to prolong the traffic stop." *Santillan II*, 902 F.3d at 58. The Second Circuit also held that even though Petitioner had standing to challenge the extension of the traffic stop, he "lacked standing to challenge the search of the car because he had no reasonable expectation of privacy" in Rivera-Vasquez's vehicle. *Id.* at 62–63.

Petitioner also reasserts the district court's failure to suppress his roadside statements and the fruits of the search of his person that followed, namely, $1,000 in cash. *See* Petition 22, 28–31. The Second Circuit rejected this claim as well and held that the district court did not abuse its discretion in denying Petitioner's motion to suppress on these grounds because (1) Officer Moreira was entitled to frisk Petitioner based on a reasonable suspicion to believe that Petitioner was armed and dangerous; (2) although Officer Moreira's roadside frisk exceeded Fourth Amendment limitations, the evidence obtained during that frisk would have been inevitably discovered during a search incident to Petitioner's arrest; (3) even though the $1,000 was thus admissible, Petitioner's

16

statements about it were the fruit of the poisonous tree and should have been suppressed, but any admission of the statements was nonetheless harmless given the strong evidence of Petitioner's guilt presented at trial; and (4) Petitioner was not subject to custodial interrogation or a *de facto* arrest when he spoke to Officer Moreira. *Santillan II*, 902 F.3d at 58–62.

Last, Petitioner argues that the district court impermissibly relied on Rivera-Vasquez's testimony to support its application of enhancements for firearms possession and for violence or credible threats of violence (namely, the attempted kidnapping) in calculating Petitioner's Sentencing Guidelines range. *See* Petition 22, 31–38. On Petitioner's direct appeal, the Second Circuit considered Petitioner's arguments, raised again here, that "the district court did not make the necessary findings of fact that the assault rifle was connected to [Petitioner's] drug offense conduct and that Rivera-Vasquez's testimony regarding the kidnapping was not corroborated by any other source." *Santillan III*, 746 F. App'x at 56. The Second Circuit rejected Petitioner's claim and affirmed the district court's calculation of the Guidelines range, holding that "there was sufficient evidence for the district court to conclude that the enhancements were warranted because [Petitioner] had used the assault rifle in connection with his drug offense conduct and had used violence or made a credible threat to use violence." *Id.* at 57.

In sum, all of Petitioner's arguments were either "expressly decided by the appellate court" or "impliedly resolved by the appellate court's mandate" and cannot be relitigated in a habeas petition. *Yick Man Mui*, 614 F.3d at 53; *see, e.g.*, *Bright v. United States*, No. 14CV968, 2018 WL 5847103, at *3–*4 (S.D.N.Y. Nov. 8, 2018). Moreover, there is no intervening change in the law that would have exonerated Petitioner had it been decided before Petitioner's conviction was affirmed on direct appeal. *See Genao*, 2010 WL 6210099, at *3–*4. Although Petitioner relies heavily on *Rodriguez* in his Petition, the Supreme Court decided *Rodriguez* in 2015, well before

Petitioner's conviction was affirmed in 2018.  *See Rodriguez*, 575 U.S. at 348.  Indeed, the district court applied *Rodriguez* in denying Petitioner's motion for reconsideration based on that case, and the Second Circuit did the same in affirming Petitioner's conviction.  *See Santillan I*, ECF No. 95; *Santillan II*, 902 F.3d at 55–56.

Accordingly, even if the Petition were not time-barred, it would be denied as procedurally barred because the entirety of the Petition attempts to relitigate claims that were already raised and rejected on Petitioner's direct appeal to the Second Circuit, in violation of the mandate rule.

## CONCLUSION

For the foregoing reasons, the Petition is DENIED.  A hearing is not required because the Petition "conclusively show[s] that [Petitioner] is entitled to no relief."  28 U.S.C. § 2255(b).  The Court declines to issue a certificate of appealability because Petitioner has not made a substantial showing of a denial of a constitutional right.  *See* 28 U.S.C. § 2253; *Love v. McCray*, 413 F. 3d 192, 195 (2d Cir. 2005).  The Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this Order would not be taken in good faith and thus Petitioner may not proceed *in forma pauperis* for any such appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court respectfully is requested to enter judgment denying the habeas Petition and to close the case.

**SO ORDERED.**

Date:  **September 24, 2024**
          **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**